**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**NICHOLAS SERVICES, LLC**
**D/B/A NICHOLAS AIR and**
**CORR FLIGHT S., INC.**                                               **PLAINTIFFS**

**v.**                                                          **No. 3:23-cv-00448-MPM-RP**

**GLASSDOOR, LLC and**
**JOHN AND JANE DOE(S) 1-30**                                  **DEFENDANTS**

## MEMORANDUM OPINION

This matter is before the Court on Defendant Glassdoor LLC's (Glassdoor) Motion to Dismiss or, in the Alternative, to Transfer This Action to the Northern District of California. [22]. Plaintiffs, Nicholas Services, LLC (Nicholas Air) and Corr Flight S., Inc. (Corr Flight), filed a response in opposition to the Motion [32], and Defendant Glassdoor filed a Reply. [34]. The Court, having reviewed the record and carefully considered the applicable law, is now prepared to rule.

## BACKGROUND

Glassdoor is an internet website where third parties can post reviews of their employers. [13]. Nicholas Air and Corr Flight (together, "Nico") are a closely related pair of companies in the private jet transportation industry. *Id*. Nicholas Air acts as the brand, and Corr Flight employs "all employees who perform duties for the Nicholas Air brand." *Id*. John and Jane Does 1-30 (Doe Defendants) are unknown individuals who have posted content on Glassdoor regarding Nicholas Air. *Id*.

When Nicholas Air discovered its review page on Glassdoor, it was not happy. It learned one or more anonymous individuals had posted defamatory reviews about it in violation of their employment contract which indefinitely prohibits "disclosure of any and all information related to

1

or in any way connected to [Nico]." *Id*. Wishing to correct these reviews, but unable to do so without claiming a Glassdoor employer account, Nicholas Air was forced to agree to Glassdoor's terms of use contract without the opportunity to negotiate. *Id*. Nicholas Air then contacted Glassdoor numerous times to have the reviews removed, before sending a detailed demand letter. *Id*. Glassdoor, upon receipt of the demand letter, assured Nicholas Air that the demand had been promptly "escalated to a senior member of [our] team," who was "working diligently to respond." *Id*. Nicholas Air received no response. *Id*.

Nico then filed suit for defamation, tortious interference with business relations, tortious interference with contracts, and (for Doe Defendants) breach of contract. *Id*. Glassdoor has moved to dismiss on the grounds of lack of personal jurisdiction, failure to state a claim under Mississippi law, and immunity under § 230 of the Communication Decency Act. [22]. In the alternative, it has moved to transfer. *Id*.

## ANALYSIS

### A. Standard of Review

In reviewing a motion to dismiss, the Court must take a plaintiff's allegations as true, view them in a light most favorable to the plaintiff, and draw all inferences in favor of the plaintiff. *F.D.I.C. v. Nathan*, 804 F. Supp. 888, 891 (S.D. Texas 1992) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). To survive a motion to dismiss, Nico must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has

not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. Rule 8(a)(2)).

## B. Personal Jurisdiction

Glassdoor first argues that this Court lacks personal jurisdiction. The Court disagrees. The only contested issue here is whether the exercise of specific personal jurisdiction over Glassdoor comports with the Due Process Clause of the Fourteenth Amendment; Glassdoor does not contest Nico's assertion that Mississippi's long arm statute is satisfied, and Nico does not contend that general personal jurisdiction exists. [23, 33, 34].

The Due Process Clause of the Fourteenth Amendment is satisfied when a defendant has "such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 592 U.S. 351, 358 (2021) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)). "To comport with due process, the defendant's conduct in connection with the forum state must be such that he 'should reasonably anticipate being haled into court' in the forum state." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Specific jurisdiction "encompasses cases in which the suit arises out of or relates to the defendant's contacts with the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). The Fifth Circuit applies a three-prong specific jurisdiction analysis: "(1) whether the defendant has minimum contacts with the forum state…; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289,

296 (5th Cir. 2020) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).

Additionally, a threshold rule applies when determining, as here, whether specific jurisdiction is proper over a website for an intentional tort. *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 318 (5th Cir. 2021). If the website is passive and only posts content for users to see, "jurisdiction is unavailable, full stop." *Id*. (citing *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002)). If the website is interactive, however, sending and receiving information from its users, then the Court must apply its "usual tests." *Id*. In this case, Glassdoor qualifies as an interactive website. Users both send and receive information from it by posting and viewing business reviews. *See, e.g.*, *Id*. (finding news website interactive when users could both view news stories and post content); *see also Revell*, 317 F.3d (finding a university's online bulletin where users could post and view information interactive).

Because Glassdoor is an interactive website, the Court must apply its "usual tests." *Johnson*, 21 F.4th at 318. The Fifth Circuit applies the *Calder* Test for online libel claims. *See Johnson*, 21 F.4th at 318; *and see Revell*, 317 F.3d at 472 (applying *Calder v. Jones*, 465 U.S. 783 (1984)). "The key question under *Calder* is whether the forum state was 'the focal point both of the [alleged libel] and of the harm suffered.'" *Johnson*, 21 F.4th at 318 (citing *Calder*, 465 U.S. at 789). While the *Calder* Test is satisfied here, this case, unlike *Johnson* and *Revell*, does not fit neatly into the standard internet-libel category where a defendant posts something defamatory online and a plaintiff sues on that basis. In this case, there are multiple relevant contacts beyond the defamatory posts, and some are offline. As a result, this case lends itself more appropriately to the traditional three-prong specific jurisdiction analysis. *Cf. Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 786 (5th Cir. 2021) ("The analysis applicable to a case involving jurisdiction

based on the Internet should not be different at its most basic level from any other personal jurisdiction case.") (citing *Pervasive Software, Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 226-27 (5th Cir. 2012).

Under the first prong of the traditional three-prong specific jurisdiction analysis, Glassdoor has sufficient contacts with Mississippi. Glassdoor created a business review page for Nicholas Air—a Mississippi company. Glassdoor then allowed purported employees to go to this review page and leave harmful ratings and reviews about this company and its employees. Some of these reviews stated that the company was located in Mississippi. Glassdoor then required a company it knew was from Mississippi to create an employer account before it could see, respond to, or complain about these negative reviews. Before allowing the company to create this employer account, Glassdoor required the company to enter a terms of use contract. After the employer account was created and the company complained to Glassdoor about the reviews, Glassdoor assured the company that it had escalated the complaint to a senior employee who was working diligently to respond. Then, Glassdoor never responded. All the while, Glassdoor showcased these negative reviews to potential Mississippi employees who were interested in working for the company, harming the company in the process. These contacts show that the maintenance of this suit is reasonable. Both Glassdoor and its users purposefully directed activity to the forum state, and Glassdoor should have anticipated being haled into court here.

Under the second prong, Nico's claims all arise from and relate to Glassdoor's contacts with Mississippi. Nico's claims are all closely related to Glassdoor's creation of the business review page, the resulting negative reviews, and Glassdoor's failure to follow through with Nico's business complaint.

After a plaintiff establishes the first two prongs, the burden shifts to the defendant to establish that the exercise of personal jurisdiction would be unfair or unreasonable, and to do so, the defendant must make a "compelling case." *E. Concrete Materials*, 948 F.3d at 296 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). "It is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)). The Fifth Circuit looks at five factors when determining whether the exercise of personal jurisdiction is fair and reasonable. *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 382 (5th Cir. 2002) ("(1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental social policies."). Glassdoor raises none of these issues in its memorandum or reply, instead focusing on its contacts with the forum state. [23, 34]. Because it has not met this burden, the final prong is satisfied, and personal jurisdiction is proper.

**C. Transfer**

In the alternative, Glassdoor argues this action should be transferred to the Northern District of California pursuant to the forum selection clause in the terms of use agreement Nicholas Air executed when creating its employer account. Although Corr Flight never executed the terms of use agreement, Glassdoor argues they too should be bound under the theories of agency and direct-benefit estoppel.

"Decisions to effect a [28 U.S.C. § 1404] transfer are committed to the sound discretion of the transferring judge, and review of a transfer is limited to abuse of that discretion." *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988) (citing *Weber v. Coney*, 642

F.2d 91 (5th Cir. 1981); *Garner v. Wolfinbarger*, 433 F.2d 117 (5th Cir. 1970); *In re Ralston Purina Co.*, 726 F.2d 1002 (4th Cir. 1984); *Arkla Exploration v. Texas Oil & Gas Corp.*, 734 F.2d 347 (8th Cir. 1984); *Roofing and Sheet Metal Serv. v. La Quinta Motor Inns*, 689 F.2d 982 (11th Cir. 1982)). Under *Atlantic Marine*, the Fifth Circuit analyzes transfer motions brought by a party seeking to enforce a forum selection clause pursuant to 28 U.S.C. § 1404. *In re Rolls Royce Corp.*, 775 F.3d 671, 677 (5th Cir. 2014) (citing *Atlantic Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 60 (2013)). "[A] proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Atlantic Marine*, 571 U.S. 49, 60 (2013) (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)). When a valid forum selection clause exists, rather than weigh the usual §1404(a) factors including plaintiff's choice of forum and the parties' private interests, "a district court may consider arguments about public-interest factors only. *Id*. at 64.

A valid forum selection clause with respect to Nicholas Air appears to exist here. Although Nico argues that the forum selection clause is procedurally unconscionable, the authority it cites in support of this is not persuasive. The Fifth Circuit has shown a reluctance towards finding forum selection clauses unconscionable, *see, e.g.*, *Begole v. N. Miss. Med. Ctr., Inc.*, 761 F. App'x 248 (5th Cir. 2019), and the circumstances here are unlikely to warrant such a finding. *See Davis v. Avvo, Inc.*, No. 8:10-cv-2352-T-27TBM, 2011 WL 4063282 (M.D. Fla. Sept. 13, 2011) (court rejected attorney's argument that online terms of service agreement entered into with attorney-review website was unconscionable even though he only agreed to the terms to respond to false information and negative reviews).

With respect to Corr Flight, however, the forum selection clause is not binding. Corr Flight never executed Glassdoor's terms of use agreement. Although Glassdoor argues that Corr Flight

should also be bound under a direct-benefit estoppel and agency theory, its supporting authority is unpersuasive. Nicholas Air and Cor Flight are separate entities. Contrary to Glassdoor's assertion, Corr Flight did not "[gain] the ability" to respond on the website when Nicholas Air entered into a contract with Glassdoor. The employer account was under Nicholas Air's name, so even if it could respond, it would do so as Nicholas Air and not Corr Flight. Because Corr Flight received no benefit from the contract entered into by Nicholas Air, they are not bound by its terms under the direct-benefit estoppel theory. *See Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469 (5th Cir. 2010).  Additionally, taking the allegations of the complaint as true and drawing all reasonable inferences in favor of Plaintiffs, Nicholas Air is not an agent of Corr Flight.

Having only one Plaintiff bound by the forum selection clause complicates the transfer determination. *In re Rolls Royce Corp.*, 775 F.3d 671, 679 (5th Cir. 2014) ("For cases where all parties signed a forum selection contract, the analysis is easy: except in a truly exceptional case, the contract controls. But not so where, as here, not all parties to the lawsuit have entered into a forum selection agreement."). One possibility would be to sever the claims and transfer Nicholas Air's case to the Northern District of California. The Fifth Circuit has held, "A district court has wide discretion to sever a claim against a party into separate case." *Id*. at 680. "Though we have not squarely addressed the issue, our jurisprudence suggests that the severance inquiry is different—and more focused on judicial efficiency—when it is combined with a section 1404 motion to transfer than when the severed case would remain in the original judicial district." *Id*. When "some but not all parties have entered into a forum selection clause," a severance-and-transfer inquiry involves three steps:

> First, pursuant to *Atlantic Marine*, the private factors of the parties who have signed a forum agreement must, as matter of law, cut in favor of severance and transfer to the contracted for forum. Second, the district court must consider the private factors

of the parties who have not signed a forum selection agreement as it would under a Rule 21 severance and section 1404 transfer analysis. Finally, it must ask whether this preliminary weighing is outweighed by the judicial economy considerations of having all claims determined in a single lawsuit.

*Id*. at 681. "While judicial economy is not the sole consideration for a district court facing a severance-and-transfer motion, it retains a cardinal role." *Id*.

In *Rolls Royce*, the Court found that severance and transfer was appropriate. *Id*. at 683. In that case, a helicopter owner sued an engine manufacturer, a float manufacturer, and a float maintenance company after the owner's helicopter crash landed in the Gulf of Mexico and sank. *Id*. at 674. The helicopter owner and the engine manufacturer had agreed to a valid forum selection clause, and the engine manufacturer moved to sever and transfer its case to the selected forum. *Id*. After the district court denied the motion, the engine manufacturer petitioned the Fifth Circuit for mandamus relief. *Id*. The Fifth Circuit reversed the district court and found there was no evidence that the transfer would cause potential administrative difficulties or harm to the non-privy parties. *Id*. at 683.

In light of *Rolls Royce*, severance and transfer is appropriate here. Both the potential administrative difficulty and the impact on judicial economy are less in this case than in *Rolls Royce*. Additionally, there is no evidence that Corr Flight would be harmed by the transfer. This is not one of the "most exceptional cases" where the public interest factors outweigh the strong presumption of validity afforded forum selection clauses. *Atlantic Marine*, 571 U.S. 49, 60 (2013).

**D. Failure to State a Claim**

Next Glassdoor argues that Nico has failed to state a claim under Mississippi law. In its First Amended Complaint, Nico claims defamation, tortious interference with business relations, and tortious interference with contracts. To survive a Rule 12(b)(6) motion, a complaint must

contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Nico's First Amended Complaint sufficiently states a claim for defamation against Glassdoor. Defamation requires four elements under Mississippi law: "[1] a false and defamatory statement concerning another; [2] an unprivileged publication to a third party; [3] fault amounting to at least negligence on the part of the publisher; and [4] either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Hegwood v. Comm. First Holdings, Inc.*, 546 F. Supp. 2d 363, 366 (S.D. Miss. 2008). Nico alleges each of these elements. Nico did not just make the conclusory statement that Glassdoor defamed it; Nico attached the posts it alleged were defamatory. As to Glassdoor's contention that Nico did not clarify "*which* statements are allegedly false," it is readily apparent that Nico asserts all of the reviews are false by [1] Nico attaching the reviews and [2] stating in its First Amended Complaint, "All of the Reviews are false." [13]. Additionally, Glassdoor's assertion that "the mere suggestion that the Does are current or former employees of Nicholas is not defamatory," is not entirely correct. While a false assertion that someone is an employee of a company is unlikely to be defamatory on its own, a false assertion that someone who has said something negative about a company is an employee of that company could be. A negative statement concerning the working conditions or environment of a company carries more weight when coming from an employee than from a third party.

Nico's First Amended Complaint does not sufficiently state a claim for tortious interference with business relations against Glassdoor. To prove its claim for tortious interference with business relations, Nico must show that "(1) The acts [by Glassdoor] were intentional and willful; (2) The

acts were calculated to cause damage to the plaintiff in its lawful business; (3) The acts were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) Actual damage and loss resulted." *Seven Seas Techs., Inc. v. Infinite Computer Solutions, Inc.*, 353 F. Supp. 3d 545, 549 (S.D. Miss. 2018). Nico did not plausibly allege elements (1), (2), and (3). It strains credulity to believe that Glassdoor acted with the calculated intention of causing damage to Nico, and no facts were presented to support this.

Likewise, Nico's First Amended Complaint does not sufficiently state a claim for tortious interference with contracts against Glassdoor. The elements for tortious interference with contract are: "(1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) that actual damage and loss resulted." *Cenac v. Murry*, 609 So. 2d 1257, 1268-69 (Miss. 1992). "[A] cause of action exists by a party to a contract against some third, outside person who causes the party not to perform." *Id*. Similar to above, no facts were presented suggesting Glassdoor intended to make anyone breach their contract with Nico, and there is no plausible reason for Glassdoor to do this.

Therefore, the claims of tortious interference with business relations and tortious interference with contract are dismissed as to Glassdoor.

### E. Communications Decency Act § 230

Lastly, Glassdoor argues that Plaintiffs' claims are barred by § 230 of the CDA. Section 230 immunizes websites from liability for content posted online by third parties. 47 U.S.C. §

230(c)(1). Section 230 was enacted "to promote the continued development of the Internet and other interactive computer services and other interactive media" and "to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation." 47 U.S.C. §§ 230(b)(1)-(2). "At its core, § 230 bars 'lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content.'" *Jones v. Dirty World Entertainment Recordings LLC*, 755 F.3d 398, 407 (6th Cir. 2014) (quoting *Zeran v. AOL*, 129 F.3d 327, 330 (4th Cir. 1997)).

Specifically, section 230 states: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Both "interactive computer service" and "information content provider" are statutorily defined terms. The term "interactive computer service" is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." *Id.* § 230(f)(2). The term "information content provider" is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." *Id.* § 230(f)(3). Thus, § 230 distinguishes between content creators and those who provide access to that content, providing immunity to the latter group.

Glassdoor, operating as a website, qualifies as an interactive computer service and is therefore afforded protection under § 230. *See, e.g., Kimzey v Yelp! Inc.*, 836 F.3d 1263 (9th Cir. 2016). While every circuit agrees that § 230 protects websites for merely publishing or moderating

third-party content, they diverge in how far the protection extends beyond this. For example, some circuits consider the negligent design of a website beyond the protective scope of § 230, while others do not. *Compare Doe v. MySpace*, *Inc.*, 528 F.3d 413 (5th Cir. 2008) (barring negligent design claim) *with Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021) (allowing negligent design claim).

The protection offered by § 230 in this Circuit is "rather broad" and extends beyond the traditional publisher's role of publishing, editing, and removing content. *Diez v. Google*, 831 Fed. App'x. 723, 725 (5th Cir. 2020) (unpublished) (per curiam). In *Doe v. MySpace*, a mother whose daughter was sexually assaulted by a man the daughter met on the website sued MySpace claiming it failed to implement basic safety measures to prevent sexual predators from communicating with minors on its website. 528 F.3d 413, 416 (5th Cir. 2008). On appeal, the mother argued that the protections of § 230 do not apply because her claim is based on MySpace's negligent design rather than any action it took as a publisher. *Id*. at 417. If MySpace, she argued, had implemented age verification software, her daughter would never have been able to access the website where she met the predator. *Id*. The Court rejected this argument holding, "Their allegations are merely another way of claiming that MySpace was liable for publishing the communications and they speak to MySpace's role as a publisher of online third-party-generated content." *Id*. at 420.

In the similar case *Doe Through Roe v. Snap, Inc.*, a Texas boy sued Snap for negligent design, negligent undertaking, and gross negligence. No. 22-20543, 2023 WL 4174061 (5th Cir. June 26, 2023) (unpublished) (per curium). The boy had been sexually assaulted by his high school science teacher who used Snapchat to "groom" him and send him sexually explicit messages. *Id*. The Fifth Circuit upheld the district court's dismissal under § 230 and stated that the boy's arguments against its application based on public policy and the statute's text were "contrary to

13

the law of our circuit." *Id*. Relying on its previous opinion in *Doe v. MySpace*, the Court held, "§ 230 of the CDA provides 'immunity ... to Web-based service providers for all claims stemming from their publication of information created by third parties.'" *Id*. (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)).

Although the Fifth Circuit has foreclosed on the liability of websites for their negligent design when the liability stems from content created by third parties, it has left open the possibility of liability if websites themselves create the content being published. *Diez v. Google*, 831 Fed.Appx. 723, 725 (5th Cir. 2020) (unpublished) (per curiam) ("[Plaintiff]'s complaint is without adequately supported allegations that [Defendant] created the disputed content. [Defendant] is therefore immune…"); *Doe v. MySpace, Inc.*, 528 F.3d 413, 422 (5th Cir. 2008) ("We therefore hold, without considering [Plaintiffs]' content-creation argument…").

The question thus remains: When does the conduct of a website rise to such a level, or when is it of such a type as to transform the website from a passive conduit of content into a content creator and pull them from beneath the protection of § 230? While no Fifth Circuit ruling has addressed this issue, cases from other courts have.

Although most cases deciding whether a website is also an information content provider and therefore not protected by §230 have found that the website is not one, some cases have held otherwise. In *Fraley v Facebook, Inc.*, Facebook was sued by a user for misappropriation of likeness when, each time the user "liked" a businesses' profile, Facebook advertised that action to that user's friends through a "story" on the friends' news feeds. 830 F. Supp. 2d 785, 790-93 (N.D. Cal. 2011). The court held that Facebook was not protected by §230 because "Facebook's actions in creating Sponsored Stories go beyond 'a publisher's traditional editorial functions[,] such as deciding whether to publish, withdraw, postpone or alter content.'" *Id*. at 802 (quoting *Batzel v.*

*Smith*, 333 F.3d 1018, 1031 (9th Cir. 2003) (internal quotation marks omitted)). So, by taking a user action that was not intended to be communicative and combining that with other information and broadcasting it to the user's friends, Facebook rendered itself an information content provider not protected by § 230. *Id.*

In *Perkins v LinkedIn, Corp.*, LinkedIn was sued by users for sending nonconsensual reminder emails that said the users wanted their contacts to join them on LinkedIn. 53 F. Supp. 3d 1222, 1225-26 (N.D. Cal. 2014). While the users saw and consented to the first email that LinkedIn sent on their behalf, they did not consent to the subsequent follow-up emails LinkedIn sent on their behalf without their knowledge. *Id*. Although LinkedIn argued that it was protected by § 230 because the user's consent to the original email made the users responsible for the substantive content of the reminder emails, the court found that LinkedIn was not protected by §230 "because LinkedIn [was] an 'information content provider' responsible 'in whole or in part' for the creation or development of the reminder emails." *Id*. at 1247 (quoting 47 U.S.C. § 230(f)(3)).

In *MCW, Inc. v. Badbusinessbureau.com, L.L.C.*, a website functioning as a consumer complaint forum was sued by a business for allegedly defamatory content posted on the website. 2004 WL 833595, at *1-3 (N.D. Tex. Apr. 19, 2004). Although Badbusinessbureau.com argued that it was protected by § 230 because third parties wrote a majority of the content at issue and it only authored the titles and organized the content, the court found that because Badbusinessbureau.com "personally [wrote] and create[d] numerous disparaging and defamatory messages about [the business] in the form of report titles and various headings," such as "Con Artists," "Scam," "Ripoff," and "Corrupt Companies," that it was considered an information content provider with respect to that content and was not protected by § 230. *Id*. at *9-10.

15

Finally, in *Fair Housing Council v. Roommates.com, LLC*, the roommate matching website Roommates.com was claimed to have violated a federal housing law prohibiting age discrimination because the user profiles on the website listed the ages of users for other users to consider when choosing a roommate. 521 F.3d 1157, 1161-62 (9th Cir. 2008). Although Roommates.com argued that it was protected by § 230 because the users input their ages themselves, the court found that, because the users were *required* to input their age for other users to consider when choosing a roommate, and because discrimination based on age is prohibited under federal housing law, Roommates.com was an "information content provider by helping 'develop' at least 'in part' the information in the profiles." *Id*. at 1165 (quoting 47 U.S.C. § 230(f)(3)).

Conversely, many cases deciding this issue have found the interactive computer service in question not to be an information content provider. *Courtney v. Vereb*, No. 12-655, 2012 WL 2405313, *5 (E.D. La. Jun. 25, 2012) (Website operating as a third-party review repository of service professionals was not rendered an information content provider and removed from § 230 protection by prompting users to provide "additional content about the professional against whom they are reporting."); *Prickett v. InfoUSA, Inc*., 561 F. Supp. 2d 646, 651-52 (E.D. Tex. 2006) (Website that served as a database for third parties to add business listings was not rendered a creator of a false business listing by prompting user to choose a neutral, pre-authored business category to add to the listing.); *Carafano v. Metrosplash.com, Inc*., 339 F.3d 1119, 1124 (9th Cir. 2003) (Dating profile website where a false profile was posted by a third party was not rendered an information content provider by "facilitate[ing] the expression of information" with an initial questionnaire because "the selection of the content was left exclusively to the user.").

In *Jones v. Dirty World Entertainment Recordings LLC*, Defendant Dirty World operated an online forum that published private, negative information about local individuals. 755 F.3d 398, 401-03 (6th Cir. 2014). Though the posts were primarily created by third-party users, out of the thousands of user submissions each day, Dirty World only selected around two hundred posts to publish. *Id*. at 403. After selecting which posts to publish, Dirty World would personally add to users' posts satirical quips that encouraged users to continue posting the negative content. *Id*. Plaintiff was the target of a series of these posts and brought an action for defamation, libel per se, false light, and intentional infliction of emotional distress. *Id*. The Sixth Circuit rejected the district court's finding that, because Dirty World "intentionally encourage[ed] illegal or actionable third-party postings," it was a creator or developer of the content at issue. *Id*. at 413. The court stated, "an encouragement test would inflate the meaning of 'development' to the point of eclipsing the immunity from publisher-liability that Congress established," and held that "because [Defendant] did not materially contribute to the illegality of [the third-party posts], [§ 230] bars [Plaintiff's] claims." *Id*. at 414-15. Importantly, when deciding the case, the court noted that Dirty World's satirical quips were not alleged to be defamatory; only the third-party posts were. *Id*.

The final case on this issue is *Kimzey v Yelp! Inc.*, 836 F.3d 1263 (9th Cir. 2016). In *Yelp*, a locksmith sued the popular business review website because two negative reviews were posted on the website by a third party. *Id*. at 1265-66. The locksmith argued that Yelp effectively created and developed the user-generated content by implementing a star-rating system that materially contributed to the third-party user inputs to such a degree as to make the final rating Yelp's own content. *Id*. at 1266. The court, analyzing the case under its "material contribution test," rejected this argument and found that Yelp's use of a user input aggregation tool did not render the website an information content provider removed from the protection of § 230. *Id*. at 1270, 1271 n.4

(mentioning the "'crucial distinction between, on the one hand, taking actions (traditional to publishers) that are necessary to the display of unwelcome and actionable content and, on the other hand, responsibility for what makes the displayed content illegal or actionable.' *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 413–14 (6th Cir. 2014)").

It therefore appears that for a website's actions to render them an information content provider thereby removing them from the protection of §230, the website must either take a creational step that, when viewed alone without third party input, is actionable, or it must force its users to take such a step—encouragement alone is not enough.[1]

Assuming the allegations in the complaint as true and making all reasonable inferences in favor of Plaintiffs, Glassdoor—much like the defendant in *Roommates.com*—effectively forced the subset of users who wished to review Nicholas Air to take an actionable step. In *Roommates.com*, the defendant forced its users to input their age when creating a profile, 521 F.3d at 1161; Glassdoor forces its users to select between "current employee" or "former employee" before leaving a review for Nicholas Air on its website even though Nicholas Air has no employees. [13, Ex. D]. Glassdoor then compiles and publishes this content under the Nicholas Air profile page that Glassdoor created with the statement, "What are Nicholas Air employees talking about?" *Id*. A negative review from an employee carries more weight than a negative review from a third party or a contractor, and, by forcing users to state they are (or were) employees

---

[1] The Court can imagine a situation where, through a combination of encouragement and selective publication, a website plays such a significant creational role that it renders itself an information content provider of the selected third-party content. If a website encourages users to submit false and harmful information, and then selectively publishes as true the submissions calculated to do the most harm, they should not be protected by § 230. The near infinite third-party generated content some websites have access to today means they can effectively speak for themselves by cherry-picking and amplifying whatever message they choose. Good sense and a desire to not only encourage truth, but preserve the republic, should inspire courts and policy makers to read § 230 in light of the goals for which it was originally intended (i.e. promoting free speech, a free market, and unfettered political discourse) rather than use it to shield reckless and destructive spiel posing as user-conversation on the internet.

18

and giving them no other options, Glassdoor is effectively making the employee-statement themselves. And although a significant majority of the harm undoubtedly stems from other material in the reviews such as the star ratings and user comments, some of this harm could plausibly come from the forced employee misrepresentation. Therefore, solely to the extent the employee misrepresentation is defamatory, Glassdoor is not shielded from liability by § 230.

### CONCLUSION

ACCORDINGLY, Defendant Glassdoor LLC's Motion to Dismiss or in the Alternative to Transfer [22] is **GRANTED IN PART** and **DENIED IN PART**. Its Motion to Dismiss for lack of personal jurisdiction is **DENIED**. Its Motion in the Alternative to Transfer is **GRANTED IN PART**, and the case is severed with respect to all claims by Plaintiff Nicholas Services, LLC and transferred to the Northern District of California as a separate case. The claims by Corr Flight S., Inc. are to remain in this case here. Its Motion to Dismiss for failure to state a claim is **DENIED** as to the defamation claim and **GRANTED** as to the claims against Glassdoor LLC for tortious interference with business relations and tortious interference with contract. Its Motion to Dismiss pursuant to § 230 is **DENIED** to the extent set forth herein.

**SO ORDERED** this the 21st day of August, 2024.

/s/Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI