UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS SERVICES, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>GLASSDOOR, LLC,<br><br>    Defendant. | Case No. 24-cv-05789-RS<br><br>**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS** |

## I. INTRODUCTION

Plaintiff Nicholas Services LLC, a private jet company, avers claims of defamation, tortious interference with business relations, and tortious interference with contracts against Defendant Glassdoor, LLC, and online employment review company. At issue are some critical reviews that Glassdoor users posted about Plaintiff. Glassdoor has moved for judgment on the pleadings, arguing, among other things, that Section 230 provides immunity from liability in this context. For the reasons explained below, the motion is granted.

## II. BACKGROUND

Plaintiff first filed this litigation in the District of Mississippi with a co-Plaintiff, its sister company, Corr Flight S., Inc ("Co-Plaintiff"). Citing a forum selection clause in Glassdoor's terms of use (which Plaintiff, but not Co-Plaintiff, had agreed to in creating a Glassdoor account), the Mississippi district court granted Glassdoor's motion to transfer venue with respect to Plaintiff but not Co-Plaintiff, effectively severing the case in two. *See Nicholas Servs., LLC v. Glassdoor, LLC*, No. 3:23-cv-00448-MPM-RP, 2024 WL 3898345, at *9 (N.D. Miss. Aug. 21, 2024).

This order assumes the parties' familiarity with the facts, which are set forth in full in the above order and discussed only briefly below. In short, Plaintiff avers that anonymous Glassdoor users defamed it with negative reviews on the site. In addition to suing those "Doe" defendants, Plaintiff seeks to hold Glassdoor liable as the publisher of the reviews. Plaintiff also avers that Glassdoor creates false and defamatory content in the form of its profile about the Plaintiff; a rating system for businesses; and a pre-titled questionnaire that requires reviewers to indicate whether they are current or former employees of the business they are reviewing. This last bit of content, according to the First Amended Complaint ("FAC"), generates necessarily false statements in the reviews because "Nicholas Air has no employees"—it is merely "a brand name" and all persons who work for the brand "are employed Corr Flight," the Co-Plaintiff. FAC ¶ 14.

### III. LEGAL STANDARD

#### A. Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings after the pleadings close but "early enough not to delay trial." A motion for judgment on the pleadings is "functionally identical" to a motion to dismiss for failure to state a claim. *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). "A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true," there is no genuine issue of material fact in dispute and the movant is entitled to judgment as a matter of law. *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011) (citation omitted); *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

#### B. Defamation

"To state a claim for defamation under California law, a plaintiff must allege the defendant (1) published a (2) false, (3) defamatory, and (4) unprivileged statement that (5) either has a natural tendency to injure or causes special damage." *Chemla v. FedEx Corp. Servs., Inc.*, No. 20-cv-06581-RS, 2021 WL 4497862, at *2 (N.D. Cal. Mar. 29, 2021) (citing Cal. Civ. Code §§ 44-46); *see also Taus v. Loftus*, 40 Cal.4th 683, 720 (2007).

ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. 24-cv-05789-RS
2

**C. Tortious Interference (Business Relations)**

Under California law, stating a claim for tortious interference with business relations requires "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Gill v. Marsh USA, Inc.,* No. 24-cv-02366-RS, 2024 WL 3463351, at *5 (N.D. Cal. July 18, 2024) (citing *TransWorld Airlines, Inc. v. Am. Coupon Exch., Inc.*, 913 F.2d 676, 689 (9th Cir. 1990)).

**D. Tortious Interference (Contracts)**

Under California law, the elements of intentional interference with contractual relations are: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (quoting *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (Cal. 1990)).

## IV. DISCUSSION

**A. Defamation**

*1. Law of the Case*

Nobody disputes that the Doe defendants, not Glassdoor, authored nearly all the allegedly defamatory statements in this case. *See, e.g.*, FAC, Dkt. No. 13, at ¶ 6 ("[U]nknown individuals . . . authored false, defamatory, hateful, malicious, and/or discriminatory reviews regarding their alleged employment at Nicholas Air"); *id.* ¶ 32 ("Doe Defendants authored the Reviews . . . ."). That said, the Mississippi district court determined that the FAC adequately plead Glassdoor's creation of at least one aspect of the at-issue reviews—"Glassdoor forces its users to select between 'current employee' or 'former employee' before leaving a review for Nicholas Air on its

website even though Nicholas Air has no employees." *Nicholas Servs.*, 2024 WL 3898345, at \*9. Moreover, that aspect of the reviews could be defamatory, the district court found, because "[w]hile a false assertion that someone is an employee of a company is unlikely to be defamatory on its own, a false assertion that someone who has said something negative about a company [such as the Does] is an employee of that company could be." *Id.*

At the start, Plaintiff declares that these holdings are now the law of case such that certain findings are required before this district court "may review an interlocutory order by a prior judge in the same case." *Zeyen v. Bonneville Joint Dist., # 93*, 114 F.4th 1129, 1138 (9th Cir. 2024). Here, however, due to a forum selection clause in the terms of use agreement that Plaintiff executed when creating a Glassdoor account, the prior judge explicitly "transferred to the Northern District of California as a separate case" Plaintiff's claims. *Nicholas Servs.*, 2024 WL 3898345, at \*9. Its subsequent analysis of the defamation claim addressed Co-Plaintiff's arguments against Glassdoor under Mississippi law, demonstrating that the court was not addressing Plaintiff's claims (which the court transferred to this district pursuant to a terms of use agreement that requires application of California law). In short, the prior order did not even concern Glassdoor's motion to dismiss Plaintiff's claims, let alone occur "in the same case." *Zeyen*, 114 F.4th at 1138. At any rate, "interlocutory orders and rulings made pre-trial by a district judge are subject to modification by the district judge at any time prior to final judgment[] and may be modified to the same extent if the case is reassigned to another judge." *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996) (quoting *In re United States*, 733 F.2d 10, 13 (2nd Cir. 1984) (citations omitted)). "There is no imperative duty to follow the earlier ruling—only the desirability that suitors shall, so far as possible, have reliable guidance how to conduct their affairs." *Id.* (internal quotation marks and citations omitted). Thus, even if the Mississippi court order as to Co-Plaintiff's claims could be construed as an interlocutory order on Plaintiff's claims such that it is part of the same case, it nevertheless does not control this court's analysis.

    2. *Section 230*

Glassdoor argues that Plaintiff's defamation claim must be dismissed pursuant to the protections of 47 U.S.C. §230(c)(1), which provides that "[n]o provider or user of an interactive

computer service shall be treated as the publisher or speaker of any information provided by another information content provider." "Section 230(c)(1) immunity is an affirmative defense, and the burden is always on the party advancing an affirmative defense to establish its validity[.]" *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 738 (9th Cir. 2024) (internal citations and quotation marks omitted).

Glassdoor is an interactive computer service provider, it contends, because "it allows users to post messages on the platform for the public to see." Motion, Dkt. No. 40 at 7 (citing *Morton v. Twitter, Inc.*, No. 20-cv-10434, 2021 WL 1181753, at *3 (C.D. Cal. Feb. 19, 2021)). Other courts agree. *See, e.g.*, *Craft Beer Stellar, LLC v. Glassdoor, Inc.*, No. 18-cv-10510-FDS, 2018 WL 5505247, at *3 (D. Mass. Oct. 17, 2018) (determining that Glassdoor acts as an interactive computer service when managing reviews). To be sure, "whether an entity is an interactive computer service provider depends on context" and "there is no permanent all-encompassing 'provider' status that indefinitely immunizes any entity deemed in a particular case to be one." *Forrest v. Meta Platforms, Inc.*, No. 22-cv-03699-PCP, 2024 WL 3024642, at *4 (N.D. Cal. June 17, 2024). In this context, however, Glassdoor plainly acted as an interactive computer service—Plaintiff said as much in the FAC. Dkt. No. 13 at ¶ 5 (averring that "GlassDoor [sic] is a website forum where employees or former employees post reviews of their employers or previous employers").

Because it has carried its burden of demonstrating that Section 230 applies to its conduct, Glassdoor cannot be held liable for the mere act of allowing users to publish reviews on its site. *See Caraccioli v. Facebook, Inc.*, 167 F.Supp.3d 1056, 1066 (N.D. Cal. 2016) ("Liability based on that sort of vicarious responsibility . . . is exactly what § 230(c) seeks to avoid."). The FAC also alleges that Glassdoor "created other false and defamatory content about Nicholas Air" in the form of a questionnaire through which employees could rate the company and express whether they would recommend it to a friend or approve of the management. FAC ¶¶ 24, 25. Section 230 also precludes liability as to this content, however, because although "the questionnaire facilitated the expression of information by individual users," "the selection of the content was left exclusively to the user[.]" *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003).

*Carafano* likewise provides Glassdoor protection from liability as to the only remaining content it allegedly created—that is, the content indicating that a given user is a current or former employee based on that user's questionnaire responses. The Mississippi district court held otherwise by analogizing this case to *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157 (9th Cir. 2008), but that comparison elided a key distinction. In *Roommates*, the website in question required users to state their living preferences in terms of protected categories (*i.e.*, sex, family status, and sexual orientation) as a condition of accessing its service. *Id.* at 1161. The Ninth Circuit recognized that this unlawfully "cause[s] subscribers to make a "statement . . . with respect to the sale or rental of a dwelling that indicates [a] preference, limitation, or discrimination," in violation of [federal law]." *Id.* at 1165 (citing the Fair Housing Act ("FHA")). Here, however, requiring users to identify as current or former employees is not inherently defamatory in the way that requiring users to express discriminatory housing preferences inherently violates of the FHA. *See, e.g.*, *id.* at 1164 ("For example, a real estate broker may not inquire as to the race of a prospective buyer."). Even if Glassdoor's questionnaire forces a user to lie, lying about having worked at a company does not have a natural tendency to injure or cause special damage. Indeed, "[i]n an abundance of caution," the *Roommates* court offered examples of similar site-created content that *would* enjoy Section 230 immunity. One such example was a dating website which required users to enter their own sex, race, or marital status through drop-down menus; the court noted that "[i]t is perfectly legal to discriminate along those lines in dating, and thus there can be no claim based solely on the content of these questions." *Id.* at 1169 n. 23. [T]his immunity is retained even if the website is sued for libel based on these characteristics because the website would not have contributed materially to any alleged defamation." *Id.* at 1169. The same is true in this instance, where discriminating between current and former employees is perfectly legal in the context of reviewing reports about potential employers, and where Glassdoor's enabling of a reviewer's self-identification as an employee has not contributed materially to any alleged defamation.

     The Mississippi Court seemingly recognized this distinction, but in its analysis, requiring a user to identify as a current or former employee of a business can defame the business when taken

together with *other* disparaging statements that the user makes. *See* 2024 WL 3898345, at *5. Respectfully, this reasoning does not persuade. As the Ninth Circuit explained in *Roommates*, the point of passing Section 230 was to allow interactive computer services such as Glassdoor "to perform some editing on user-generated content without thereby becoming liable for all defamatory or otherwise unlawful messages that they didn't edit or delete." 521 F.3d at 1163. In this regard, *Carafano* is the appropriate precedent to follow. There, a dating website user created a profile impersonating an actress and soliciting "an unconventional liaison." *Roommates*, 521 F.3d at 1171 (discussing *Carafano*). The website was immune from the actress's subsequent defamation claim, notwithstanding the fact that its questionnaire facilitated the expression of allegedly false and defamatory information. Those "neutral tools, which the anonymous dastard used to publish the libel . . . did absolutely nothing to encourage the posting of defamatory content—indeed, the defamatory posting was contrary to the website's express policies. The claim against the website was, in effect, that it failed to review each user-created profile to ensure that it wasn't defamatory. That is precisely the kind of activity for which Congress intended to grant absolution with the passage of section 230." *Id.* at 1171–72. Like in that case, here, Glassdoor is "merely a passive conduit" and thus "c[an] not be held liable for failing to detect and remove" the alleged defamation. *Id.* at 1172.

### B.  Tortious Interference with Business Relations and Contracts

Section 230 also forecloses the viability of Plaintiff's tortious interference claims, each of which rests on the allegation that Glassdoor "published" certain reviews and "created" certain content. FAC ¶ 41. As just explained, Glassdoor cannot be held liable as "the publisher or speaker of . . . information provided by another information content provider," see 47 U.S.C. 230(c)(1), and that immunity extends to the provision of neutral tools, such as the rating systems and indications of employment status.

Even if Section 230 immunity did not apply, however, the tortious interference claims would fail. As to the averred interference with an economic relationship, the FAC fails to identify any such relationship that could support the claim. The closest is the averment that Glassdoor's conduct "caus[es] prospective employees to be deterred from employment," FAC ¶ 18, but such a

broad and nonspecific class is "exactly the type of speculative economic relationship that does not support an intentional or negligent interference with economic advantage claim." *Santa Fe Props., LP v. Source Bioscience, Inc.*, No. 20-cv-10727-JFW, 2021 WL 6104156, *3 (C.D. Cal. Feb. 10, 2021). As to the averred interference with a contract, the FAC fails because Glassdoor's alleged conduct (*i.e.*, publishing the reviews and then not taking them down) happened *after* the supposed contractual breach by the Doe defendants (*i.e.*, by authoring the reviews in supposed contravention of NDAs). That chronology means that the causation prong of the tortious interference claim cannot be met. *See, e.g.*, *Resolute Forest Prods., Inc. v. Greenpeace Int'l.*, No. 17-cv-02824-JST, 2019 WL 281370, *14 n.5 (N.D. Cal. Jan. 22, 2019) (dismissing similar claim because, as a matter of timing, "the statements could not have caused the alleged termination" of contract at issue). Moreover, as to both tortious interference claims, the FAC fails to allege any facts which suggest that Glassdoor intended to disrupt Plaintiff's relationships with any purported future employees or the Does.

## V. CONCLUSION

For the reasons explained above, the motion for judgment on the pleadings is granted.

**IT IS SO ORDERED**.

Dated: January 17, 2025

RICHARD SEEBORG
Chief United States District Judge